Gaston, J.
 

 The bill in this case was filed, returnable to March Term, 1829, of Guilford Court of Equity, by Harman Howlett, against John Thompson, Pleasant Bevil and James Johnston, but at the appearance term the name of James Johnston as á defendant was permitted to be strtcken out.— All the original parties have died pending the suit, and,asrevived, it is a suit between the heirs of Howlett, plaintiffs, and the executor of Thompson and the heirs of Bevil, defendants-The bill charges in substance, that James Johnston, as the agent of the executors of Col. Robert Lindsay, had, in the mon th of November, 1818, with the view merely of securing the payment of certain judgments of the said executors against Harman Howlett, amounting with principal, interest and costs to the sum of one hundred and one dollar, bid off at that price, at execution sale, a tract of land of the said Hewlett, containing two hundred acres, and of far greater value, under an engagement (o permit the said Howlett to redeem the sdid land by refunding the purchase money and interest; that in the month of December, 1818, or of January, 1819, Johnston called on Howlett to refund the money, and that the latter, to enable him to comply with this demand, was induced to enter into a contract with the defendant, Thompson, according to which the latter lent him the sum of one hundred dollars at an annual interest of twelve dollars and a half, with a stipulation that Thompson would receive payment of the interest in labor, and that, to secure the repayment of the sum lent with the interest above, said Thompson should get an assignment of Johnston’s purchase of or title in the land; that this contract was communicated to Johnston by both the parties and carried into execution— the one hundred dollars were advanced by Thompson upon the agreed terms, and Johnston relinquished to Thompson his interest in the land under the purchase at execution sale,
 
 *371
 
 upon an express understanding that Thompson should hold the title in the land, which land was then fully worth $500, as a securityfor the repayment with 12½ per cent, interest on the money lent. - The bill charges, that for some time Howlett paid the interest so stipulated, but ' Thompson, nevertheless, having procured the legal title to the land, brought an action of ejectment against him, and, having obtained a judgment in said action, came with the sheriff, armed with a writ of possession, to turn him out of doors, at a time when his wife was confined to her bed; and tlien and there, under the said writ and by threats of turning the said Howlett out of doors, extorted from him a. bond or note for the sum of fifteen dollars, as rent for said land.for a year, which bond the bill alleges that Howlett has paid. The bill further, charges that Thompson seemed-for a time satisfied in having thus extorted from Howlett this acknowledgment- of tenancy, and demanded no further rent nor received any further interest; but recently sold and conveyed the said land to the defendant Pleasant Bevil, who it is charged had full notice oí all the. matters in the bill, and they, the said Thompson and Bevil, have instituted an action of ejectment against Howlett to dispossess him and obtained judgment therein, at the February Term, 1829, of Guilford County Court. It sets forth that he is ready and willing to pay whatever is justly due from him of principal and interest upon the money lent; and prays that execution on the judgment in ejectment may be enjoined, that an account maybe taken of what is justly due upon the said loan, and that on payment thereof he may be permitted to redeem, and for general relief. The answer of the defendant Thompson states, that, having understood that James Johnston, -who had purchased the land of Howlett at execution sale, was willing to part with the same to any person, who would advance the amount bid for it, he made application to Johnston and- thereupon entered into a contract with
 
 him,
 
 whereby he agreed to pay to said Johnston the sum aforesaid, and Johnston agreed to convey to him the land, and that this contract was fully carried into execution. ‘ The answer denies that he made any contract whatever with Howlett for advancing the money at
 
 12i
 
 per cent, interest, and
 
 *372
 
 holding the land as a security, or that he purchased the land at' instance or for the benefit of Howlett, but avers that he purchased absolutely for himself. The answer denies that Howlett has paid Thompson 12§ per cent, interest or any thing by way of interest on the money, falsely charged in the bill to have been advanced; admits that Howlett has occasionally worked for him, but says that he also furnished Howlett with many articles at different times, and believes that upon this running account there is á balance of $20 or $30 due Thompson. The answer admits that, at November Term, 1821, he instituted an action oí ejectment against Howlett and at November Term, 1822, obtained judgment, and says that he did not sue out the writ of execution until the 28th of January, 1823; that he then went with the deputy sheriff to have the same executed, when Howlett proposed torenttheland for a year, and, this proposition being accepted, he gave Thompson his note under seal for the sum of fifteen dollars, payable on the 28th of December then next ensuing, for the rent of the land the said Howlett then .lived on; but the answer denies that the said note was paid or that Thompson ever obtained any subsequent rent for the land, and says that, although he considers Howlett as having continued his tenant at the same annual rent and justly owing the samej he has forborne
 
 to press him
 
 therefor, because of his
 
 inability to
 
 pay it. The answer says, that Thompson at last sold the land to Bevil, at $400, and gave Howlett notice to quit and deliver up possession to Bevil; that this was not done, and Bevil there upon instituted an action to gain the possession. The answer of Bevil sets forth that on the 14th of October, 1826, while Howlett was in possession of the land, as was believed by Bevil, as the tenant of Thompson, the said Bevil bought the land of Thompson at the price of $400, half of which he paid a short time thereafter, and the other half, which was payable at 12 months, remains yet unpaid. This defendant denies that, at the time of his purchase, he had any knowledge of Howlett’s pretended equity or claim in or to the land, declares that at the time of the purchase Thompson assured him that Howlett would give up the possession pt new years day, and that the title was good, and says, that
 
 *373
 
 afterwards (but does not state whether before or after payment of half the purchase money) Howlett laid claim to the land and wrote many letters to him concerning the same, which he refused to receive, believing Howlett’s object was to take some advantage of him. This defendant admits that he brought the action of ejectment on the separate demises of Thompson and himself, and insists that there is no injustice in availing himself of the judgment therein rendered to obtain the possesion of his land.
 

 Upon the coming in of these answers, the injunction to restrain theisssuing of the
 
 habere facias possessionem,
 
 which had been granted on the filing of the bill, was dissolved with costs. To the answers of these defendants there is a general replication.
 

 Notwithstanding the explicit denial by Thompson of the agreement alleged in the bill, we feel ourselves bound, by the proofs, to declare that agreement established. The testimony of James Johnston to that point is very distinct and positive. He declares that after he had purchased Howlett’s land at execution sale in November, 1818, he agreed with Howlett to give up the land, if the latter would pay the money bid therefor before Johnston was called on for it by the sheriff; that this was not done; and, about the Christmas following, he went in company with a surveyor to survey the land, when Howlett supplicated for further indulgence, and represented that Thompson was about to lend him the money to pay for the land; that witness told Howlett, if Thompson would agree to let him have the land upon easy terms, the witness would, notwithstanding some trouble and expense already incurred, let Thompson have it for $110; that a day was appointed for the three to meet, and they accordingly did meet on the 7th of January, 1819, when the following arrangement was made: The witness was to receive $110, of which $100 was paid down by Thompson, $5 by Howlett, and the remaining five promised to be paid by Howlett in a few days, the witness to transfer the title to Thompson, and Howlett to repay the $100 so advanced by Thompson
 
 in cash,
 
 with interest thereon, at the rate of 121 per cent, per annum, the interest payable in labor, on the first day of A
 
 *374
 
 prjl next, and receive a conveyance of his land. Upon this distinctly understood agreement the witness shortly thereafter made the conveyance to Thompson, and declares that he never would have permitted Thompson or any other person to have the land at that price, but for the purpose of befriending Howlett. This testimony is confirmed by that of other witnesses, and by the circumstances of the case.
 

 William Hutchinson deposes, that about a week before the April term of Guilford County Court succeeding this transaction, he heard Thompson say, either “that he had let Howlett have a hundred dollars lo redeem his land from Johnston,” or “ that he had paid one hundred dollars to Johnston for Iiowlett’s land;” that Howlett was to repay the money at the court, but he expected it would not be done; but that it would answer if repaid by the next succeeding court; and that, at the same time, he stated, either that he had a deed or was to have a deed for the land, to hold until the money should be repaid him.
 

 Mary Bevil deposes that she has often heard Thompson say that he had lent Howlett $ 100 to redeem his land, and that she has heard him tell Howlett, if he would pay fifty dollars, he (Thompson) would' wait for the residue until Howlett could make it.
 

 In addition to this testimony, the vast disproportion between the value of the land and the price alleged to have been paid for it by Thompson, isa very important consideration. There is, indeed, no precise testimony as to its value, but we must take it to have been worth at least the sum for which it was sold to Bevil. Now, independently of Johnston’s express declaration on oath, it cannot for a moment be supposed that he would have conveyed the land to Thompson dt one-fourth of its value, had he not regarded Thompson as taking the title but as a security for the money-advanced for Howlett. Towards the latter he felt himself under the obligations of humanity and honor to show indulgence, but Thompson had no claims on him for a sacrifice of interest. It appears also, from an exhibit, filed by the defendant, that after making the pretended absolute purchase on the 7th of January, 1819, Thompson took no step what
 
 *375
 
 ever to assert a title to the land, until more than two years thereafter, during all which time Howlett continued to occupy and enjoy it. On the 17th of October, 1821, he sued out a declaration in ejectment on the several demises of Johnston and himself, which .demises are laid as of the 12th oi December, 1820, and, having obtained a judgment at November term, 1822, sued out a writ of possession. Armfield, the deputy sheriff, whom he accompanied, when going to execute this writ, has been examined for the defendants, and proves that, at the time the note for the year’s rent was given, Howlett’s wife was
 
 lying
 
 sick, and Howlett was apprised before the note was given, that they had come to put him out of doors. And from that day, Howlett was permitted to enjoy the land, without paying any rent or securing the payment of any rent, notwithstanding the belief of Thompson that he was unable to pay, until after the land was sold to Bevil.
 

 It is exceedingly difficult to reconcile this conduct with that of the undisputed legal and equitable proprietor of the land; but it is reconcilable with that of one, who, while he believed he had contrived to secure the title to himself, was conscious that this had been done at the expense of fair claims on the part of the occupant.
 

 One deposition has been taken for the purpose of proving notice in Bevil, previous to his purchase. But we deem it unnecessary to examine into the effect of this testimony or into the credit of the witness. There is
 
 no proof
 
 whatever of the
 
 payment
 
 of the purchase money, or of any part of it, by Bevil; and even of that part, which alone his answer alleges to have been paid, the answer does not aver the payment to have been made
 
 before the notice,
 
 which he admits that he obtained of Howletf s claim shortly after the purchase.
 

 The plaintiffs are entitled to have an account taken of the amount of money which may be due to the executor of Thompson for the principal and lawful interest of the $100 advanced for their ancestor on the 7th of January, 1819, deducting the payments made thereon, if any, whether as payments of interest or principal; and tobe let in to redeem the land as having been in effect mortgaged for the repayment
 
 *376
 
 thereof. There should also bean account of the costs incurred in the two suits at law by the parties respectively, showing by whom the same have been paid, or who remain liable for the payment thereof; and there must also be an account of the rents and profits received by any of the parties defendants, since the dissolution of the injunction.
 

 Per Curiam, Ordered accordingly.